WATSON v. NEWELL.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. EVIDENCE (§ 220*)—ADMISSIONS BY SILENCE.

In an action against the estate of a decedent upon a note which was equal in amount to the entire value of the decedent's estate, evidence that plaintiff in a conversation with one of the heirs at law, who was subsequently made administrator, as to the renting of the decedent's land, did not mention the note, is admissible; it being the administrator's theory that plaintiff forged the note when he ascertained that the decedent had not devised him her property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 771–785; Dec. Dig. § 220.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WITNESSES (§ 406*)—COMPETENCY OF CONTRADICTORY EVIDENCE.
      In an action against the estate of a decedent upon a note, where plain-
   tiff's witness testified that the decedent's sister in her last illness stated
   that it had been arranged that all the property of decedent and herself
   should go to plaintiff at the death of decedent, evidence by another wit-
   ness that the sister was unconscious during all of her visits is admis-
   sible in contradiction.
      [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279;
   Dec. Dig. § 406.*]

3. EVIDENCE (§ 477*)—EXPERT EVIDENCE—SUBJECT OF EXPERT TESTIMONY.
      A nonexpert witness may testify as to the consciousness or unconscious-
   ness of a person.
      [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2237–2241;
   Dec. Dig. § 477.*]

Appeal from Trial Term, St. Lawrence County.

Action by Wallace Watson against Arthur Newell, as administrator
of the goods, chattels, and credits of Alice E. Smith. From judgment
for plaintiff, and an order overruling a motion for new trial, defendant
appeals. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

Conger & Orvis, of Gouverneur, for appellant.
Abbott & Dolan, of Gouverneur, for respondent.

LYON, J. This action was brought to recover the amount of a
promissory note for $4,000 of date September 3, 1909, bearing the
name of defendant's intestate as maker, and payable to the order of
plaintiff one day after date. The defense was that the note was a for-
gery, but, if genuine, was without consideration and was obtained by
fraud, and was void.

[1] Decedent died December 6, 1909, aged about 60 years, owning
in real estate the place occupied by her and by plaintiff's family, where
she died, worth about $2,000, and about $2,000 of personal property.
She was unmarried, and her nearest relatives were an aunt, who lived
in the West, and cousins, of whom the defendant was one. She had
been well acquainted with the plaintiff for upwards of 20 years, and
at various times during that period he had lived in her father's family
and her own. The precise date of the appointment of defendant as
administrator does not appear otherwise than that it was prior to
the 17th day of February, 1910. Called as a witness in his own be-
half, he testified that up to that time he had seen the plaintiff several
times after the death of his intestate, and said something to him about
the renting of the place, and he presumed may have had three or
four talks with him. The question was then asked him by his attorney:

"Q. Did he in any of those conversations say anything about having a
claim against Miss Smith or an offset against the rent? (Objected to as in-
competent, irrelevant and leading; objection sustained; exception taken.)"

The respondent claims that the exclusion of this testimony was not
error, for the reason that the witness had not at the time these con-
versations were had been appointed administrator of the estate, and

hence that there was no duty on the part of the plaintiff to state to the witness that he held this note, while the appellant claims that the testimony bore directly upon the contention of defendant that plaintiff did not have the note at the times of these conversations, but later forged it when he found that decedent had left no will giving him her property. We think that the ruling was erroneous. From the testimony of the plaintiff it appears that the heirs met at the house and talked over the matter of the appointment of the administrator, but the date of the meeting is not stated. However, from the fact that the defendant was at the house about the middle of January for the purpose of taking the inventory, as he testifies, it may be inferred that prior to that time he had been agreed upon by the heirs as the person to be appointed administrator. But in any event as an heir at law, and hence as a tenant in common of the real estate, and also as one of the next of kin of decedent, he was personally interested in all the assets of the estate. As the questions indicated, the conversations had between plaintiff and the witness related in part at least to the rentals of the place, and it would have been natural for the plaintiff to have claimed an offset had he possessed one, and the fact whether or not he made such claim was a material and proper subject for consideration by the jury.

[2] Regarding the other ruling complained of by appellant, it appears that near the close of the trial the plaintiff called Mrs. Jennie Ferguson, who testified that three days before the death of Mrs. Kealey, who was a sister of defendant's intestate, with whom she resided, and who died about April 1, 1909, Mrs. Kealey said to the witness in the presence of decedent, who was sitting on the side of the bed, that the plaintiff was their friend and the friend of their old father and "now we have made up our minds if there is anything left after Alice gets through, that it goes to Mr. Watson," and she said, "We have arranged that." Mrs. Ferguson also testified to a conversation with decedent's intestate the day preceding her death in which Mrs. Ferguson testified that decedent again gave expression to her sense of obligation to Mr. Watson, and in which she told the witness that she had not made a will, but said:

"I have made something that is just as good, and it goes to Mr. Watson because I feel that he deserves it."

The witness was considered an important one for plaintiff. For the purpose of contradicting her testimony, defendant called Bertha Bennett, whose testimony appears in the record as follows:

"I live in Gouverneur. I know Mrs. Jennie Ferguson. I knew Alice E. Smith. I remember the time when Mrs. Kealey died. I was there twice a day for I think two weeks anyway before she died.

"Q. Was she conscious or unconscious at that time? (Objected to as incompetent and immaterial, and no foundation has been laid for the testimony. Objection sustained. Exception.)"

We think the exclusion of this testimony was also error. The defendant had the right to show if he could that on these occasions of the visits of the witness twice daily during the two weeks preceding the death of Mrs. Kealey she was unconscious as bearing upon the prob-

ability of the conversation testified to by Mrs. Ferguson having taken place.

[3] A lay witness may testify as to the consciousness or unconsciousness of a person. Chicago City Railway Co. v. Van Vleck, 143 Ill. 480, 32 N. E. 262.

As a new trial must be had in which the evidence as to the consideration for the note may differ from that included in the present record, we do not pass upon that question at this time.

The judgment and order appealed from must be reversed with costs to the appellant to abide the event. All concur.